ARTHUR D. TINSMAN, DRAIN COMMISSIONER OF MONROE
COUNTY, v. THE BOARD OF SUPERVISORS
OF MONROE COUNTY.

*Drains—Assessment—Estoppel.*

A land-owner is not estopped from taking advantage of irregulari-
ties in the assessment of a drain tax upon his land by appear-
ing before the jury appointed to award damages, and accept-
ing an award made to him upon *other land*, and entering into
a contract to construct a portion of the drain, it not appearing
that he had any notice or knowledge that the land, the assess-
ment of which he complains of, had been so assessed until the
assessment roll was completed, and it was too late for him
to appeal from the action of the drain commissioner in making
such assessment.

*Mandamus.* Argued February 16, 1892. Denied March
3, 1892.

Relator applied for *mandamus* to compel the respond-
ent to rescind an order that a certain drain tax should
not be spread upon certain land, and to direct the
spreading of the tax. The facts are stated in the
opinion.

*Willis Baldwin,* for relator.

*A. B. Bragdon* and *Landon & Lockwood,* for respond-
ent.

PER CURIAM. Proceedings were commenced in Sep-
tember, 1890, by the relator, as county drain com-
missioner, to lay out and establish what is known as the
"Thomas Drain" in Monroe county.

The commissioner was unable to obtain the right of

way through the E. ½ of the W. ½, and the W. ½ of the E. ½, of the S. W. fractional quarter of section 6, owned by Charles Thomas, and through the E. ½ of the N. W. fractional quarter of section 7, owned by Russell Johnson, all of said lands being in the township of Ash in said county. He made application to the probate court of that county for the appointment of special commissioners as provided by statute. In this application he alleged that the drain traversed, among other descriptions, the E. ¾ of the S. W. fractional quarter of section 6, and the E. ½ of the N. W. fractional quarter of section 7. A hearing was had upon this application, at which Thomas and Johnson both appeared, and made certain objections, which were overruled. Upon demand a jury was impaneled, and an award was made to Thomas of $200 damages, and to Johnson of $193. The report of the jury was confirmed by the probate court without objection, and Thomas and Johnson each accepted the award. Contracts for the construction of the drain were let, Thomas and Johnson each taking contracts for the digging of the drain. The commissioner made his apportionment of benefits, and assessed upon the E. ¾ of the S. W. fractional quarter of section 6, 27 per cent. of the cost, and 10 per cent. of the cost upon the E. ½ of the N. W. fractional quarter of section 7. After these assessments of benefits were made, the drain commissioner learned that the entire E. ¾ of the S. W. ¼ of section 6 was not owned by Charles Thomas, but that the east 40 of that description was owned by Russell Johnson. The commissioner thereafter, in making out his roll to the supervisor, divided that apportionment in proportion to the acreage, and placed 9 per cent.—being one-third of the assessment—upon the east 40, and entered that east 40 upon his roll as

unknown. The supervisor subsequently made his report to the board of supervisors of that county, and Johnson appeared before the board, and contested the tax upon this east 40, claiming such irregularities in its assessment that the board could not order it spread upon that description of land. The matter was heard before the board of supervisors, and by resolution the board directed that the tax should not be spread upon that description.

This is an application for *mandamus* to compel the board of supervisors to rescind its action and direct the spreading of the tax, which now amounts to $117.49.

We think there were such irregularities that the board of supervisors was warranted in taking the action it did.

The claim is here made that Johnson is estopped from setting up these irregularities because of his appearance before the jury and acceptance of the award made to him, and entering into a contract to construct a portion of the drain.[1] It does not appear, however, that he had any notice or knowledge that the land owned by him on section 6 had been assessed for any portion of this drain until the assessment roll was completed, and when it was too late for him to appeal from the action of the drain commissioner. 3 How. Stat. § 1740*e*3.

The writ of *mandamus* must be denied.

---

[1] Counsel cited *Brownell v. Supervisors*, 49 Mich. 414; *Harwood v. Commissioner*, 51 Id. 639; *Gillett v. McLaughlin*, 69 Id. 547; *Cook v. Covert*, 71 Id. 249.